145 P.3d 1024 (2006)
EMPLOYERS INSURANCE COMPANY OF NEVADA, Appellant,
v.
Duane DANIELS; and Bechtel Nevada Corporation, Respondents.
No. 44575.
Supreme Court of Nevada.
November 9, 2006.
*1025 David H. Benavidez, Henderson, for Appellant.
King Gross & Sutcliffe, Ltd., and Marvin S. Gross, Las Vegas, for Respondent Duane Daniels.
Santoro, Driggs, Walch, Kearney, Johnson & Thompson and Daniel L. Schwartz, Las Vegas, for Respondent Bechtel Nevada Corporation.
Before the Court En Banc.[1]

OPINION
GIBBONS, J.
Nevada has a statutory firefighters' conclusive presumption, that the heart disease of full-time firefighters who have been employed for five years or more before becoming disabled arises from employment. In this case, the firefighter worked at least five years for each of two successive employers before becoming disabled from heart disease. Thus, we must determine which of the two employers is liable for medical and disability payments. We conclude that the last injurious exposure rule applies in these circumstances *1026 and places responsibility for compensation on the employer in closest temporal proximity to the disabling event. As the district court did not apply the last injurious exposure rule and instead imposed liability on the employer in furthest temporal proximity to the disabling event, we reverse the district court's order and remand for further proceedings consistent with this opinion.

FACTS
Respondent Duane Daniels worked as a firefighter for the City of North Las Vegas (the City) from 1970 to 1985. In 1991, after spending several years working in other jobs, Daniels returned to work as a firefighter at the Nevada Test Site for Reynolds Electrical & Engineering Company (REECo). In 1996, respondent Bechtel Nevada Corporation took over operations at the test site. Except for a brief period when Daniels worked as a truck driver, he was employed as a firefighter at the test site.
Medical history
As a firefighter, Daniels had to submit to yearly physicals for his employers.[2] While employed by the City, none of Daniels' physicians noticed any evidence of heart disease. At his first physical for his position at the test site in 1991, the physician noted that Daniels smoked one pack of cigarettes daily and that his high cholesterol put him at risk for heart disease and cancer. Consequently, the doctor warned Daniels in writing to stop smoking immediately. The examining physician gave Daniels the same written warning during his 1992 and 1993 physicals. Daniels never stopped smoking.
While vacationing in Washington State in 1994, Daniels went to a local hospital because his pulse was racing. The doctor prescribed medication, which Daniels understood would help keep his pulse regular. Upon returning to Las Vegas, Daniels visited a local doctor, who gave him an electrocardiogram (EKG) and concluded that although Daniels was doing fine, he had risk factors of coronary disease, including being overweight and a smoker.
Between 1994 and 1999, Daniels did not visit any other doctors specifically for his heart condition. However, Daniels' heart began racing again after he stopped taking his medication, prompting a visit to a local hospital. The doctor told him to continue taking the medication. Other than this brief break from the medication, Daniels continued taking his pulse-regulating medication continuously between 1994 and 1999.
In March 1999, Bechtel required that Daniels undergo a stress EKG in order to participate as a member of Bechtel's hazardous materials team. Because the EKG results were abnormal, the treating physician recommended a profusion scan. The scan suggested a possible prior inferior wall myocardial infarction, or heart attack. The doctor completed a claim form based on these results, which Daniels submitted to Bechtel.
In February 2000, while on his way to work, Daniels suffered a heart attack. Daniels' doctor completed a second claim form, diagnosing Daniels with chronic ischemic heart disease, coronary atherosclerosis, and angina pectoris. The doctor found Daniels permanently disabled as a firefighter effective September 2000.
Claims history
Based on his possible prior silent heart attack, Daniels filed his first disability claim in April 1999. CDS of Nevada, the third-party administrator for Bechtel, denied the claim. Daniels appealed the determination, and in February 2000, the hearing officer reversed the determination, noting the conclusive presumption of NRS 617.457(1). Bechtel appealed the decision to the State Department of Administration.
Daniels stated in deposition testimony that before his 1994 hospital visit in Washington, he could not recall any treatment for his heart. During a hearing before an appeals officer, Daniels stated that he could not remember whether he took time off after the Washington incident, but it would have been "[b]rief, if any." Bechtel also deposed Daniels' treating cardiologist, Dr. Harry Thomas, *1027 who testified that Daniels' heart disease had manifested itself before April 1999.
Daniels filed a second claim with Bechtel after suffering the heart attack in February 2000. Also, as a result of Dr. Thomas's testimony, Daniels submitted a third claim to appellant Employer's Insurance Company of Nevada (EICON), the City's insurer. In November 2000, EICON denied liability for Daniels' claim. Daniels appealed the decision, and a hearing officer affirmed. After consolidating Daniels' appeal with Bechtel's pending appeal, the appeals officer determined that Daniels' claim against EICON was valid.
EICON then filed a petition for judicial review in the district court, along with a motion for remand, to show that Daniels had disqualified himself from the benefit of the conclusive presumption due to his failure to quit smoking after repeated written warnings. The district court granted EICON's motion for remand. On remand, EICON sought records of Daniels' physical examinations performed during his years of employment with the City. The appeals officer denied EICON's motion for production, reasoning that the request was unduly burdensome. After another hearing, the appeals officer issued new findings of fact and concluded that EICON had presented no evidence to prove that the City had advised Daniels in writing to correct a predisposing condition. The appeals officer affirmed his earlier decision, concluding that EICON was responsible for Daniels' claim. The district court denied EICON's second petition for review, and EICON filed this timely appeal.

DISCUSSION
Given that Daniels worked for each of two employers as a firefighter for five or more continuous years, we must consider which employer is liable for his disability. Under the statutory firefighters' conclusive presumption, the heart disease of full-time firefighters who have been employed for five years or more before becoming disabled arises from employment. The presumption, however, does not speak to which of two or more qualifying employers bears the burden of disability payments. Consequently, the last injurious exposure rule applies in such circumstances and places responsibility for disability compensation on the employer in closest temporal proximity to the disabling event. As our conclusion turns on temporal proximity, we first consider when Daniel's disabling event occurred.
Daniels was disabled in 2000, not 1994 as determined by the appeals officer
Which of Daniels' two firefighting employers bears responsibility for his disability necessarily turns on the date that he became disabled. In considering this date, we review the administrative agency's decision "for clear error or an arbitrary abuse of discretion."[3] The agency's factual findings, while entitled to deference, must nonetheless be supported by substantial evidence.[4] Substantial evidence is "that which `a reasonable mind might accept as adequate to support a conclusion.'"[5]
NRS 617.060 defines disablement for purposes of occupational diseases as "the event of becoming physically incapacitated by reason of an occupational disease arising out of and in the course of employment." An employee is not entitled to compensation "from the mere contraction of an occupational disease. Instead, compensation . . . flows from a disablement resulting from such a disease."[6]
An employee must also notify his or her employer in writing of an occupational disease "as soon as practicable, but within 7 days after the employee . . . has knowledge of the disability"[7] and must also "file a claim *1028 for compensation with the insurer within 90 days after the employee has knowledge of the disability and its relationship to his employment."[8]
Further, NRS 617.420 states that the employee is not entitled to compensation unless the employee has been incapacitated "for at least 5 cumulative days within a 20-day period from earning full wages, but if the incapacity extends for 5 or more days within a 20-day period, the compensation must then be computed from the date of disability." "[T]he date of disablement is such date as the insurer determines on hearing of the employee's claim."[9]
We have previously interpreted the definition of "disabled" in order to determine eligibility for, and the period from which to calculate, benefits for an employee with an occupational disease.[10] In Mirage v. State, Department of Administration, an employee experienced pain in her arms and wrists and filled out an employee accident report, listing November 15, 1991, as her injury date. The employee continued working until April 1992, when her physician excused her from work due to the worsening of her condition. Because the employee continued working until April, this court concluded that "she was neither disabled nor eligible for benefits in accordance with NRS 617.420 until she ceased working for at least five cumulative days during a twenty-day period."[11] We reasoned that the employee's wage could be calculated, for purposes of determining benefits, "only after she was disabled; i.e., unable to continue working."[12]
Here, the appeals officer based his finding that Daniels was disabled as of 1994 on Daniels' testimony that he might have taken some time off work after his initial hospital visit for a racing pulse. We conclude that Daniels' response that the time he took off was "[b]rief, if any," cannot support the conclusion that he took five cumulative days off after returning from Washington and was therefore disabled and unable to continue working. Even though Daniels' heart condition first manifested itself in 1994, he did not become disabled for purposes of the statutory scheme until six years later, when his doctor found him permanently disabled and unable to work as a firefighter. Therefore, the appeals officer erred in finding that Daniels was disabled as of 1994. As a matter of law, Daniels was disabled in 2000.
The last injurious exposure rule places liability on Bechtel, as Daniels was disabled during his employment there in 2000
In order to receive benefits for an occupational disease, "[a]n employee or his dependents . . . [must usually] establish by a preponderance of the evidence that the employee's occupational disease arose out of and in the course of his employment."[13] In contrast, the so-called "conclusive firefighters' presumption" excludes firefighters with heart disease from having to prove that the disease arose out of and in the course of employment.[14] NRS 617.457(1) states that the heart disease "of a person who, for 5 years or more, has been employed in a full-time continuous, uninterrupted and salaried occupation as a firefighter . . . before the date of disablement [is] conclusively presumed to have arisen out of and in the course of the employment."[15] Under NRS 617.457(6), however, "[f]ailure to correct predisposing conditions which lead to heart disease when so ordered in writing by the examining physician subsequent to the annual examination excludes the employee from the benefits of this section if the correction is within the ability of the employee."
*1029 Therefore, an employer is charged with responsibility for a firefighter's disability benefits arising from heart disease if, at the time of disablement, the firefighter had already worked, full-time, for five consecutive years as a firefighter. An employer can defend a claim by showing that the employee failed to correct a predisposing condition, such as smoking or being overweight, after being warned to do so in writing.[16]
We previously determined, in Gallagher v. City of Las Vegas,[17] that under the firefighters' presumption, disablement from heart disease does not have to occur during employment as a firefighter. Instead, as long as the employee served as a salaried firefighter for five continuous, uninterrupted years, the presumption applies. In this case, as Daniels had five continuous, uninterrupted years of employment as a salaried firefighter with both the City and Bechtel, either the City or Bechtel could be charged with responsibility for his disability claim. In situations such as this one, involving successive employers that may each be charged with responsibility for the disability under the firefighters' presumption, the last injurious exposure rule applies.
The last injurious exposure rule has formerly been utilized in the context of an occupational disease claim involving asbestos exposure. In SIIS v. Jesch,[18] we concluded that a claim for death benefits under Nevada's Occupational Disease Act was viable. Even though the decedent had been exposed to asbestos while working for numerous employers in Nevada, the last injurious exposure rule placed responsibility for compensation on the last employer whose work environment had a causal relationship to the decedent's asbestos-related disease.[19] We reasoned that "the last injurious exposure rule provides the most efficient and reasonable means of establishing liability in successive-employer occupational disease cases."[20]
Similarly, in cases like this one, involving a conclusive presumption that can apply to any one of successive employers, the last injurious exposure rule is the most efficient and reasonable way to establish employer liability.[21] Since a causal relationship between firefighting and heart disease is conclusively presumed if the firefighters' presumption criteria are met, the employer closest in temporal proximity to the disabling event, and to whom the presumption applies, bears the burden of paying disability compensation.
In this case, Daniels was disabled in 2000, during his employment with Bechtel. Consequently, Bechtel is charged with responsibility for the claim. Bechtel may defend the claim, however, by showing that Daniels failed to quit smoking after repeated written warnings to stop.

CONCLUSION
The district court erred in denying EICON's petition for judicial review. Substantial *1030 evidence does not support the appeals officer's finding that Daniels was disabled as of 1994. Instead, the record indicates, as a matter of law, that Daniels was disabled in 2000, while he worked for Bechtel. Consequently, although the firefighters' presumption applies to both the City and Bechtel, the last injurious exposure rule places responsibility for disability compensation on Bechtel. Bechtel can defend itself, however, by showing that Daniels failed to quit smoking, a predisposing condition within his control, after being warned to do so in writing. We therefore reverse the district court's order denying the petition for judicial review and remand for proceedings consistent with this opinion.
ROSE, C.J., DOUGLAS and HARDESTY, JJ., concur.
MAUPIN, J., with whom BECKER, J., agrees, concurring.
I agree that Duane Daniels did not become disabled until after his heart attack in February of 2000 and that Bechtel is the employer responsible for firefighter disability benefits owed under NRS 617.457(1). The majority, however, goes on to indicate in the conclusion to its opinion that "Bechtel can defend itself [on remand] . . . by showing that Daniels failed to quit smoking, a predisposing condition within his control, after being warned to do so in writing." This observation is based upon NRS 617.457(6), which precludes recovery of firefighter disability benefits under NRS 617.457(1) when the firefighter has failed to correct conditions that lead to heart disease. I write separately to address the application of NRS 617.457(6) to the remaining proceedings below. NRS 617.457(6) provides as follows:
Failure to correct predisposing conditions which lead to heart disease when so ordered in writing by the examining physician subsequent to the annual examination excludes the employee from the benefits of this section if the correction is within the ability of the employee.
In my view, the requirement of compliance with physician ordered "correction" of "predisposing conditions which lead to heart disease" is ambiguous as it relates to smoking. This is because it is generally understood that a heart attack is usually the end result of one general conditionongoing developmental coronary artery disease characterized by atherosclerotic changes that are reflective of a person's genetic profile. And, to the extent that NRS 617.457(6) might relate to smoking, which may play a role in the exacerbation of progressive heart disease in many individuals, smoking is not a "condition."[1]
Notwithstanding the Legislature's chosen terminology, it clearly intended that firefighters who smoke should not enjoy the presumption that disability attendant to heart disease after five years on the job is a compensable event. Giving way to the Legislature's intent in passing NRS 617.457(6), that a worker should follow physician-imposed directions to cease unhealthful activity that may increase the chances of disability caused by heart disease, I would construe this measure as requiring a medical analysis of whether and the extent to which use of tobacco products has caused or contributed to a firefighter's heart attack, or accelerated the progress of his or her coronary vessel disease. This principle should govern the remaining proceedings on remand.

CONCLUSION
Although smoking is not in and of itself a medical condition that can be corrected under NRS 617.457(6), smoking is also known to accelerate or exacerbate the progress of coronary vessel disease. Accordingly, it is relevant to this disability claim under NRS 617.457(1). I would note, however, that the burden of overcoming the presumption should be on the employer.
BECKER, J., concur.
NOTES
[1] The Honorable Ronald Parraguirre, Justice, voluntarily recused himself from participation in the decision of this matter.
[2] NRS 617.457(3).
[3] Construction Indus. v. Chalue, 119 Nev. 348, 352, 74 P.3d 595, 597 (2003).
[4] Id.
[5] State, Emp. Security v. Hilton Hotels, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).
[6] Prescott v. United States, 523 F.Supp. 918, 927 (D.Nev.1981).
[7] NRS 617.342(1).
[8] NRS 617.344(1).
[9] NRS 617.445.
[10] See Mirage v. State, Dep't of Administration, 110 Nev. 257, 258, 871 P.2d 317, 318 (1994).
[11] Id. at 260, 871 P.2d at 319.
[12] Id.
[13] NRS 617.358(1).
[14] See NRS 47.240(6) (stating that a statute can create a conclusive presumption).
[15] A conclusive or irrebuttable presumption is "[a] presumption that cannot be overcome by any additional evidence or argument." Black's Law Dictionary 1223 (8th ed.2004).
[16] Hearing on A.B. 755 Before the Assembly Comm. on Labor and Mgmt., 65th Leg. (Nev., May 23, 1989).
[17] 114 Nev. 595, 601, 959 P.2d 519, 522 (1998).
[18] 101 Nev. 690, 709 P.2d 172 (1985).
[19] Id. at 696, 709 P.2d at 176-77.
[20] Id.; see also Collett Electric v. Dubovik, 112 Nev. 193, 198, 911 P.2d 1192, 1195 (1996) (explaining that the last injurious exposure rule applies in both occupational disease cases and successive injury cases).
[21] We note that although it may appear unfair for one employer to bear the entire burden of disability compensation when the firefighters' presumption applies to other employers, subsequent employers can protect themselves from liability by requiring prospective firefighters to provide medical histories and undergo physical examinations. We have recognized that although the last injurious exposure rule may seem to produce a harsh result, ultimately, the risk is spread among numerous employers. Jesch, 101 Nev. at 696, 709 P.2d at 176. And, as the Nebraska Supreme Court recognized in adopting the last injurious exposure rule in asbestos-related cases: "`[W]e are constrained to so interpret our Work[ers'] Compensation Law as will best serve the interests of employees who suffer from an occupational disease, rather than attempt an adjustment of their rights in the light of equities that may exist between [successive employers].'" Osteen v. A.C. & S., Inc., 209 Neb. 282, 307 N.W.2d 514, 519 (1981) (quoting Wilson v. Van Buren County, 198 Tenn. 179, 278 S.W.2d 685, 688 (1955)), quoted in Jesch, 101 Nev. at 696, 709 P.2d at 176-77.
[1] I note that smoking may lead to an addiction that can be considered a medical condition. But it is not the addiction that medically leads to coronary vessel disease, it is the long-term intake of tobacco smoke, whether the smoker is addicted or not, that does so.