**Rodney PETZAK, Plaintiff,**

v.

**State of NEVADA, ex rel., its DEPARTMENT OF CORRECTIONS, Alys Dobel, an individual, Defendants.**

**No. 3:06–CV–343–ECR–VPC.**

United States District Court,
D. Nevada.

Sept. 23, 2008.

Jeffrey A. Dickerson, Reno, NV, for Plaintiff.

Stephen D. Quinn, Carson City, NV, for Defendants.

### *Order*

EDWARD C. REED, JR., District Judge.

This case asks whether the plaintiff must submit to a "stress" or "exercise" electrocardiogram ("EKG") instead of a regular EKG as part of his annual physical for his state job. Plaintiff Rodney Petzak is seventy-four years of age and a correctional officer for the Nevada Department of Corrections ("NDOC"). Defendant Alys Dobel is Petzak's supervisor at the NDOC. Although still employed by the NDOC, Petzak seeks to enjoin Dobel from requiring him to submit to a stress EKG.

### *I. Procedural Background*

Petzak originally filed suit on June 24, 2006, asserting two causes of action: (1) a violation of the Rehabilitation Act; and (2) a 42 U.S.C. § 1983 claim alleging a violation of the Equal Protection Clause of the Fourteenth Amendment. Petzak has since abandoned his Rehabilitation Act claim and now pursues only his § 1983 claim. The Rehabilitation Act claim named the State of Nevada and the NDOC as defendants; the § 1983 claim named only Alys Dobel as a defendant. With the withdrawal of the Rehabilitation Act claim, Dobel is the only remaining defendant. Petzak seeks both injunctive relief and compensatory damages. (P.'s Complaint ¶¶ 15, 16 (# 1).)

Dobel filed a Motion for Summary Judgment ("D.'s MSJ") (# 18) on September 17, 2007, arguing that she is entitled to qualified immunity. Dobel claims that requiring the plaintiff to submit to a stress EKG violates no constitutional right, and in any case, no constitutional right prohibiting such a test was clearly defined. Petzak filed an Opposition ("P.'s Opp.") (# 19) to the motion for summary judgment on October 2, 2007. Petzak contends that, 'though the alleged equal protection violation is subject to rational basis review, the decision to commence stress EKG tests at age 40 is unconstitutional.' Dobel filed a Reply (# 20) on October 9, 2007.

The motion is ripe, and we now rule on it.

## II. Factual Background

Petzak works for the Nevada Department of Corrections as a correctional officer. As a correctional officer, he must undergo a physical examination each year pursuant to state statute. *See* Nev.Rev. Stat. ("NRS") 617.457. Under the statute, if an officer has worked for the state for more than five years and develops heart disease, there arises a conclusive presumption that any such disease is work related. This conclusive presumption permits the officer to receive worker's compensation and disability pay due to the disease instead of requiring the officer to prove causation by a preponderance of the evidence. *See Manwill v. Clark County,* 123 Nev. 28, 162 P.3d 876, 879–80 (2007) (so stating); *Employers Ins. Co. of Nev. v. Daniels,* 122 Nev. 1009, 145 P.3d 1024, 1025 (2006). To prove fitness for duty, however, officers must submit to an annual physical, including an EKG. *See* Nev. Admin. Code ("NAC") 617.070(1)(d); Nev. Indus. Comm'n Reg. 39.050(c) (1982). Officers over the age of forty must submit to a stress EKG. NAC 617.070(1)(e); Nev. Indus. Comm'n Reg. 39.050(d) (1982).

The Complaint (# 1) indicates that Petzak remains employed with the NDOC. The Complaint does not allege that Petzak has suffered any adverse employment action as a result of the stress EKG. The Complaint does not allege that Petzak has failed the stress EKG, or that he would pass a non-stress EKG. The Complaint is devoid of any claim of harm, other than that Petzak is required to take a stress EKG, which causes him "stress and inconvenience, physically and mentally." (Compl. ¶ 16 (# 1).)

## III. Standard of Review

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. *N.W. Motorcycle Ass'n v. United States Dep't of Agric.,* 18 F.3d 1468, 1471 (9th Cir.1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving par-

ty has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form—namely, depositions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c); *Beyene v. Coleman Security Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988).

■■■ In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Summary judgement is not proper if material factual issues exist for trial. *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir.1999). "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Disputes over irrelevant or unnecessary facts should not be considered. *Id.* Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. *Id.*

## IV. Discussion

Petzak seeks both injunctive relief and compensatory damages. Dobel's motion (# 18) for summary judgment raises only the issue of qualified immunity.

### A. Qualified Immunity and Money Damages

■■■ Qualified immunity is a valid defense for a public official in an action for damages. Qualified immunity is immunity from suit, not merely from liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

■■■ Whether a state actor is entitled to qualified immunity turns on a two-step inquiry. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). First, a court determines "whether a constitutional right would have been violated on the facts alleged." *Id.* If no constitutional right would have been violated, the inquiry ends. *Id.* at 201, 121 S.Ct. 2151. Second, assuming a violation is established, a court evaluates "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Id.* The "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151.

■■■ Courts are to address the qualified immunity issue in a specific order to develop the law. *Id.* at 200, 121 S.Ct. 2151. Before addressing whether the constitutional right in question was clearly established, we must first determine

whether there was a constitutional violation. *See id.*

### 1. Alleged Violation of a Constitutional Right

Petzak contends that the state denied him equal protection under the law in violation of the Fourteenth Amendment by requiring him to take a stress EKG while requiring correctional officers under the age of 40 to take a regular EKG.

#### a. Standard of Review for Age Classifications

■■■■ State-sponsored age or disability classifications are presumptively constitutional under the Equal Protection Clause. *Hibbs v. Dep't of Human Resources*, 273 F.3d 844, 855 (9th Cir.2001). The burden "is entirely on the challenger of state-sponsored age or disability discrimination to prove that the discrimination is not rationally related to any conceivable legitimate governmental interest." *Id.* (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) ("[T]he burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification.")) (internal quotation marks omitted); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) ("[T]he individual challenging [the discrimination] bears the burden of proving that the facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.") (internal quotation marks omitted).[1]

■■■■ Thus, rational basis review applies here. We presume that the stress EKG requirement for officers over the age of 40 is constitutional. Petzak has the burden of overcoming this presumption and must show that there is no rational relationship between the requirement and any legitimate state interest. If there is such a relationship between the stress EKG requirement and any legitimate state interest, no constitutional right will have been violated, and Dobel will be entitled to qualified immunity.

#### b. Rational Basis Review Applied

■■■■ As noted above, the State of Nevada requires firefighters and police officers, a group which includes Petzak, to undergo physicals every year for insurance purposes. Once an officer meets the five-year qualifying employment threshold a conclusive presumption arises: if the officer ever develops heart disease, then the officer's treatment for that disease is covered by insurance. Coverage exists regardless of the disease's cause—whether it be congenital, idiopathic, or otherwise induced—and despite any preexisting symptom or condition. *Manwill*, 162 P.3d at 879. Thus, there is a rational basis for requiring covered employees to submit to annual physicals.

In addition, the state has an interest in ensuring that its correctional officers are physically fit for duty as set forth in the NDOC's Administrative Regulation 314. (D.'s Reply Ex. A (# 20).) Certainly the state would not want to employ correctional officers whose fitness level could endanger themselves or others.

Nevertheless, in the present case there is no evidence that demonstrates a reason for requiring a stress EKG of those correctional officers over the age of 40. Even given the lax standard associated with rational basis review, nothing seems to justi-

---

1. *But cf.* Note, *The Irrational Application of Rational Basis: Kimel, Garrett, and Congressional Power To Abrogate State Sovereign Immunity*, 114 Harv. L.Rev. 2146 (2001) (arguing that a heightened level of scrutiny should be applied to age-based decisions made by state officials).

fy the age classification.[2] The Court sees the need for EKGs and physicals in general, but nowhere can we divine that the age of 40 is relevant to the legitimate state interests listed above.

Relatedly, Dobel's expert's letter shows a rational basis for requiring stress EKGs of employees in general, but does not state why the age of 40 is the critical age at which to start using stress EKGs. Dr. Bryg, the expert, refers to several studies demonstrating a relationship between physical exertion and myocardial infarction. (D.'s Reply 2–3 (# 20).) Not one of the attached studies supports requiring stress testing for individuals solely because they are 40 years of age.

One of the studies attached to Dobel's motion does find an increased risk of sudden cardiac death for men over the age of 40 while hiking. (D.'s MSJ Ex. B (Part 4) 8–10 (# 18–6) Martin Burtscher & M. Philadelphy, *Sudden Cardiac Death during Mountain Hiking and Downhill Skiing*, 329 *New England Journal of Med.* 1738 (1993).) Nevertheless, the study concludes that "[e]xercise testing … may be advisable for those with symptoms of coronary disease and for physically inactive men over 40." *Id.* at 1738–39. The Nevada statute requires exercise testing of all officers over 40, irrespective of symptoms of coronary disease or physical inactivity.

Dr. Bryg also notes that the American Heart Association ("AHA") previously recommended stress tests for subjects over the age of 40, though the AHA increased that age to 45 in 2002. (*Id.* at 3.) Dr. Bryg writes that when the AHA increased the

age guideline to 45, the American College of Cardiology ("ACC") and the AHA classified the age guideline as a Class IIB recommendation. A Class IIB recommendation means that "there is conflicting evidence and/or a divergence of opinion in the usefulness/efficacy of a procedure or treatment and where the usefulness/efficacy is less well established by evidence and/or opinion." (D.'s MSJ Ex. B, 1 (# 18–3).)

Contrary to Dobel's assertion, the AHA guidelines do not recommend stress testing for individuals simply because they reach a certain age. (*See* D.'s MSJ Ex. B (Part 4) 2–10 (# 18–6) Michael Lauer, et al., *Exercise Testing in Asymptomatic Adults*, 112 *Circulation* 771 (2005).) Instead, the guidelines only recognize the "possible value of exercise testing" in men over 45 years of age—or women over 55 years of age—"who plan to start vigorous exercise programs, are involved in high-risk occupations, *and* are at risk for coronary disease because of other diseases such as peripheral atherosclerosis and chronic renal failure." Lauer, *Exercise Testing*, at 772 (emphasis added).

Viewing Dr. Bryg's letter and the attached studies in the light most favorable to Petzak, the ACC and the AHA recommend stress testing at age 45 for men with certain risk factors, even though the usefulness of the procedure is uncertain and less well established. For purposes of a motion for summary judgement, there appears to be no reason why the age of 40 is the necessary age at which to start stress-testing all correctional officers at their annual physicals.[3]

---

**2.** In *Kimel,* the Supreme Court stated that the "Constitution permits States to draw lines on the basis of age when they have a rational basis for doing so at a class-based level, even if it 'is probably not true' that those reasons are valid in the majority of cases." 528 U.S. at 86, 120 S.Ct. 631, 647 (quoting *Gregory v. Ashcroft,* 501 U.S. 452, 473, 111 S.Ct. 2395,

115 L.Ed.2d 410 (1991)). Here, there is no reason for the line to be drawn at age 40, or any other specific age for that matter.

**3.** Neither side argues that Petzak suffers from any of the enumerated risk factors, nor does either side suggest that Petzak is physically inactive.

We next turn to the legislative history of the Nevada statute to see if the legislature articulated its reasoning for selecting the age of 40. Neither the legislative history behind NRS 617.457 nor the Nevada Administrative Code offers a rationale for requiring stress EKGs of correctional officers over the age of 40. The Administrative Code refers to two Industrial Commission reports, but neither is helpful. The first report, from 1982, does nothing more than beg the question. *See* Reg. 39.050, Nev. Indus. Comm'n (Mar. 25, 1982) (stating that a stress EKG is required for "all police officers and salaried firemen who are 40 years of age or older"). The second report, from 2001, discusses a separate matter and is not on point.

We do note that the age of 40 is the age at which the National Fire Protection Association ("NFPA") recommends that firefighters start receiving stress EKGs during their physicals. It is not at all certain, however, why the NFPA selected the age of 40. As such, simply using the NFPA's selected age only creates the age classification and does not in itself supply a rational basis for the age classification.

Even given the low bar associated with rational basis review, the Court is unable to find any reason for requiring correctional officers over the age of 40 to undergo a stress-EKG test as part of their annual physical simply because they have reached the age of 40. While the Court is not limited to the record before it for rational basis review, there appears to be no rational basis for the age classification. The burden is on Petzak to negative any reasonably conceivable set of facts that could demonstrate a rational basis for the requirement, and we find he has met his burden. Therefore, we conclude that Petzak's constitutional rights under the Equal Protection Clause have been violated.

We turn now to whether a reasonable person would have known that enforcement of the regulation was unlawful.

### 2. Whether the Right Was Clearly Established

 Petzak must show that his right not to undergo a stress EKG was clearly established "in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. The "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151 (internal quotation marks omitted).

Throughout his Opposition (# 19), Petzak cites several cases that articulate the second prong of the general test of qualified immunity. He then merely asserts that "the cited cases" clearly establish the constitutional violation. (P.'s Opp. 6 (# 19).)

 Petzak's analysis is not sufficient. Petzak provides no authority to support the conclusion that requiring a stress EKG violates the Equal Protection Clause. None of the cases Petzak cites in his brief relates to the specific context of this case, much less clearly establishes any rule regarding stress EKG testing and age.[4] *See Hope v. Pelzer,* 536 U.S. 730,

---

4. We note that "a victim's constitutional rights may be clearly established in the absence of a case 'on all fours prohibiting [the] particular manifestation of unconstitutional conduct [at issue].'" *Boyd v. Benton County,* 374 F.3d 773, 781 (9th Cir.2004) (quoting *Deorle v. Rutherford,* 272 F.3d 1272, 1286 (9th Cir.2001)) (alteration in *Boyd* ). Where officials' actions are so "patently violative of the constitutional right that reasonable officers would know without guidance from the courts that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established," *Id.* (internal quotation marks omitted). This is not such a case.

122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (case regarding attaching prisoner to a hitching post); *Saucier,* 533 U.S. 194, 121 S.Ct. 2151 (case regarding excessive force); *Kimel,* 528 U.S. 62, 120 S.Ct. 631 (case holding that the Age Discrimination in Employment Act did not abrogate a state's Eleventh Amendment immunity); *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (case regarding media ride-along during execution of arrest warrant); *FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (case regarding franchising of satellite master antenna and television facilities); *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (case regarding warrantless search of a residence); *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (case regarding zoning regulation for group home); *Taylor v. Rancho Santa Barbara,* 206 F.3d 932 (9th Cir.2000) (case permitting mobile ·home park to exclude potential resident because the potential resident was too young); *Fajardo v. County of L.A.,* 179 F.3d 698 (9th Cir.1999) (case regarding priority of domestic violence crimes with 9–1–1 calls); *Patel v. Penman,* 103 F.3d 868 (9th Cir. 1996) (case regarding issuance of permits for motels to remedy building code violations); *Osolinski v. Kane,* 92 F.3d 934 (9th Cir.1996) (case regarding prisoner's claim under the Eighth Amendment); *Armendariz v. Penman,* 75 F.3d 1311 (9th Cir. 1996) (en banc) (case regarding over-enforcement of housing code to relocate criminals); *Lockary v. Kayfetz,* 917 F.2d 1150 (9th Cir.1990) (as amended) (case regarding public utility district and water hookups); *Harris v. Bd. of Educ.,* 798 F.Supp. 1331 (S.D.Ohio 1992) (case regarding wrongful termination of teachers); *Gallagher v. City of Las Vegas,* 114 Nev. 595, 959 P.2d 519 (1998) (case holding that qualified firefighters' heart diseases were conclusively presumed to arise from their employment)

Petzak has failed to demonstrate that the constitutional right in question was clearly established in the specific context of the case. It would not have been clear to a reasonable officer that it was unlawful to require a correction officer over the age of 40 to submit to a stress EKG in accordance with state law.

## B. Qualified Immunity and Injunctive Relief

■ Even though Dobel is entitled to qualified immunity, we pause to address an issue the parties neglected. Put simply, Dobel can only claim qualified immunity in an action for damages; qualified immunity does not bar injunctive relief. *Am. Fire, Theft & Collision Managers, Inc. v. Gillespie,* 932 F.2d 816, 818 (9th Cir.1991) (quoting *Presbyterian Church (U.S.A.) v. United States,* 870 F.2d 518, 527 (9th Cir.1989) ("Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief.")).

In *American Fire,* the Ninth Circuit concluded that none of the reasons for supporting qualified immunity applied in an action seeking only declaratory or injunctive relief. First, the court determined that the potential for an injunction would not likely deter an official from exercising her duties. *Id.* Second, the court doubted that anyone would shy away from public office on the chance that she would be subject to an injunction that limited the exercise of her authority. *Id.* Finally, the court recognized that an action for an injunction is against the government and not the individual defendant; in general, the government provides the legal representation and puts up the defense. *Id.*

Dobel's motion (# 18) for summary judgment will be denied insofar as Petzak's claim seeks injunctive relief.

### V. Conclusion

Petzak has established that Dobel violated his constitutional right to equal protection under the law; however, he has failed to show that this right was clearly established. Dobel would not reasonably have thought that her conduct violated the law; thus, she is entitled to qualified immunity insofar as Petzak seeks money damages.

Qualified immunity does not bar a suit seeking injunctive relief; Dobel's motion for summary judgment will be denied to the extent it relates to Petzak's claim for injunctive relief.

*IT IS THEREFORE HEREBY ORDERED THAT* the defendant's Motion for Summary Judgment (# 18) is **DENIED** in part to the extent that it relates to the plaintiff's claim for injunctive relief. *IT IS FURTHER ORDERED THAT* the defendant's Motion for Summary Judgment (# 18) is **GRANTED** in part insofar as the plaintiff seeks damages.