141 Nev., Advance Opinion 5

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| CCMSI, AS THIRD-PARTY ADMINISTRATOR FOR STATE OF NEVADA DEPARTMENT OF PARKS, Appellants, vs. ROBERT ODELL, Respondent. | No. 87130-COA **FILED** JAN 30 2025 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

CCMSI, as third-party administrator for State of Nevada Department of Parks, appeals a district court order denying a petition for judicial review in a workers' compensation matter. Eighth Judicial District Court, Clark County; Joe Hardy, Jr., Judge.

*Affirmed.*

Hooks Meng & Clement and Daniel L. Schwartz, Las Vegas, for Appellants.

GGRM Law Firm and Lisa M. Anderson, Las Vegas, for Respondent.

---

BEFORE THE COURT OF APPEALS, BULLA, C.J., and GIBBONS and WESTBROOK, JJ.

*OPINION*

By the Court, GIBBONS, J.:

To receive benefits for an occupational disease, an employee must typically "establish by a preponderance of the evidence that the

25-04468

employee's occupational disease arose out of and in the course of his employment." *Emps. Ins. Co. of Nev. v. Daniels*, 122 Nev. 1009, 1015, 145 P.3d 1024, 1028 (2006) (quoting NRS 617.358(1)). However, NRS 617.457(1) creates a conclusive presumption for firefighters, police officers, and arson investigators under certain circumstances. A firefighter, police officer, or arson investigator employed for two years who has a heart condition that leads to disablement is entitled to a conclusive presumption that the heart disease arose out of the person's employment. NRS 617.457(1); *Daniels*, 122 Nev. at 1015-16, 145 P.3d at 1028. However, NRS 617.457(11) provides a party defending against such a claim with an affirmative defense: if a doctor orders the employee to correct predisposing conditions that lead to heart disease, and those predisposing conditions are within the ability of the employee to control, the employee can only benefit from the conclusive presumption if the employee does indeed correct them.

In this case, we are asked to determine whether the relevant predisposing conditions requiring correction under subsection (11) are the predisposing conditions that lead to the heart disease referenced in subsection (1). We hold that under a plain reading of NRS 617.457(1) and (11), the relevant predisposing conditions for purposes of subsection (11)'s affirmative defense are the conditions that cause the disabling heart disease as described in subsection (1). Therefore, we conclude the appeals officer correctly applied the law and her decision ordering workers' compensation benefits is supported by substantial evidence. Thus, we affirm the denial of judicial review.

## FACTS AND PROCEDURAL HISTORY

Respondent Robert Odell was born with a congenital heart defect, known as transposition of the great arteries (TGA), in which the placement of the pulmonary artery, which supplies deoxygenated blood to

the lungs, and the aorta, which takes oxygenated blood to the body, are transposed. *See* Carole A. Warnes, *Transposition of the Great Arteries*, 114 Circulation 2699, 2699-700 (2006). At the age of two, Odell underwent a surgical procedure to correct his TGA, but his heart problems persisted into his adult life. Odell received treatment for conditions such as arrythmias, bradycardia and tachycardia, sick sinus syndrome, myocardial ischemia, and other cardiac dysfunction, which ultimately led to the implantation of a pacemaker in 2019.

Nonetheless, Odell passed a pre-employment physical and began working as a firefighter within the Nevada Division of Forestry (NDF) beginning in 2016.[1] He was promoted to crew supervisor shortly thereafter where his duties, in addition to responding to wildfires and other natural disasters, included supervising inmates serving sentences with the Nevada Department of Corrections on various conservation, community service, and highway beautification projects.[2] In 2016, Odell went to his yearly physical examination required of all firefighters, and the doctor ordered him to lower his blood sugar to less than 100 millimoles per liter. In 2017, a doctor expressed concern about Odell's low heart rate and enlarged left ventricle but imposed no activity restrictions. Odell passed his

---

[1] Although the appellant is identified as the Nevada Department of Parks throughout the proceedings, it should be noted that there is no such Department in Nevada. Odell's employer, NDF, lies within the Nevada Department of Conservation and Natural Resources, although there is also a Nevada Division of State Parks.

[2] To be interviewed for the position of crew supervisor, a candidate must be able to carry a 45-pound pack for 3 miles in 45 minutes or less. *Becoming a Conservation Crew Supervisor*, Nevada Division of Forestry, https://forestry.nv.gov/becoming-a-conservation-crew-supervisor (last visited Dec. 16, 2024).

2018 annual physical with no heart disease risk factors identified. Following his March 2019 employment physical, Odell was ordered to correct several risk factors, including high blood pressure, high cholesterol, high low-density lipoprotein (LDL), high triglycerides, and high blood sugar.

In May 2019, Odell awoke with a heart rate of 160 beats per minute that did not subside. His physician Dr. Ricardo Samson wrote that Odell's tachycardia was likely related to the childhood surgery to correct the TGA. Pursuant to NRS 617.344(1), Odell completed a workers' compensation form detailing the incident within 90 days. CCMSI, the third-party administrator for NDF, denied Odell's claim, citing the fact that Odell did not correct the risk factors identified in his annual physical as its basis. Odell appealed, and this claim ultimately became part of the consolidated appeal with two more episodes and resulting claims that an appeals officer would decide in November 2022.

At Odell's annual physical in February 2020, Dr. Anthony Field noted high LDL levels but no other predisposing conditions. Although Dr. Field ordered Odell to lower his LDL, he also noted that Odell had two conditions, sick sinus syndrome and tachy-brady syndrome, which were likely an outcome of his congenital heart disease.

In December 2020, CCMSI denied a claim relating to a September 2020 work incident in which Odell's heart rate increased to 225 beats per minute while he was hiking with a chainsaw and did not slow down when he stopped hiking. Despite the written opinions of Dr. Samson and Dr. Field expressing that Odell's current heart problems were caused by his congenital heart defect and corrective surgery, CCMSI denied the claim on the basis that Odell did not lower his LDL to an acceptable level

as ordered. This claim denial became part of the consolidated appeal as well.

Many of Odell's risk factors returned in 2021, as his annual physical in February revealed high blood sugar, high total cholesterol, high LDL, and high triglycerides, all of which he was ordered to correct. Following the physical, Odell's primary care physician, Dr. Leigh Reardon, wrote two letters stating that Odell's current heart disease was not related to these risk factors, but rather occurred due to his congenital heart defect and complications stemming from his childhood surgery.

While working on the Summit Trail fire in September 2021, Odell woke up with an accelerated heart rate that continued into the next day. Odell reported the incident, and as had been the case previously, CCMSI denied his claim citing his failure to correct the risk factors. This occurred despite the opinion of Dr. Dhiraj Narula, whom CCMSI had mandated Odell to see, that the development of heart issues around age 40 was common in patients who underwent the surgery that Odell had at age 2. And Odell was 38 at that time. Dr. Narula also commented that the stress and smoke exposure inherent in Odell's job likely contributed to his cardiac issues. Odell and CCMSI stipulated to waive an initial hearing on this claim and proceed directly to the appeals officer for a resolution.

The appeals officer issued her decision and order on the consolidated appeals in November 2022. In reversing and remanding all three of CCMSI's denials, she ordered CCMSI to accept Odell's claims as he qualified for the presumption under NRS 617.457(1) that his disabling heart disease arose out of his employment as a firefighter. The appeals officer made several conclusions, five of which are relevant here:

First, Odell satisfied the two-year work requirement under NRS 617.457 by working full time as a firefighter for two years before he started experiencing tachycardia in connection with his general heart condition. Second, Odell established "disablement" for the purposes of NRS 617.457 when he was unable to work as a firefighter due to multiple hospitalizations and medical procedures—including the pacemaker implantation—in 2019 and 2020. Third, Odell established that he suffered from a "disease of the heart" based on the opinions of Dr. Reardon and Dr. Narula, who both stated that Odell's congenital heart condition placed him at a greater risk of arrythmias that caused him to miss work. Fourth, Odell "submitted evidence sufficient to show his predisposing conditions of elevated blood glucose [and] lipid levels did not lead to his [disabling] heart disease" from Dr. Reardon and Dr. Narula. Fifth, because those predisposing conditions did not lead to Odell's disabling heart disease, his failure to correct those conditions was irrelevant.

CCMSI petitioned the district court for judicial review, which the district court denied. CCMSI now appeals from the order denying judicial review.

## ANALYSIS

"The standard for reviewing petitions for judicial review of administrative decisions is the same for this court as it is for the district court." *City of Reno v. Bldg. & Constr. Trades Council of N. Nev.*, 127 Nev. 114, 119, 251 P.3d 718, 721 (2011). "Like the district court, we decide pure legal questions without deference to an agency determination." *Id.* (internal quotation marks omitted). Nor do we give the district court deference when reviewing appellate challenges to district court decisions on petitions for judicial review. *City of North Las Vegas v. Warburton*, 127 Nev. 682, 686,

Court of Appeals
of
Nevada

6

262 P.3d 715, 718 (2011). Accordingly, this court reviews purely legal questions, such as statutory interpretation issues, de novo. *Id.*

When interpreting a statute, we first look to the statute's plain language and construe that statute "according to its fair meaning and so as not to produce unreasonable results." *Dolores v. State, Emp. Sec. Div.*, 134 Nev. 258, 259-60, 416 P.3d 259, 261 (2018). If the statute's language "is clear on its face, this court will not go beyond the statute's plain language." *Pawlik v. Deng*, 134 Nev. 83, 85, 412 P.3d 68, 71 (2018) (quoting *J.E. Dunn Nw., Inc. v. Corus Constr. Venture, LLC*, 127 Nev. 72, 79, 249 P.3d 501, 505 (2011)). A statute should not be read in a manner that renders a part of that statute meaningless. *Tough Turtle Turf, LLC v. Scott*, 139 Nev., Adv. Op. 47, 537 P.3d 883, 886 (2023) ("All provisions are considered together so as not to render any part of the statute superfluous."). "Under the whole-text canon, we interpret provisions within a common statutory scheme harmoniously with one another in accordance with the general purpose of the statutes." *Id.* at 886 (cleaned up).

CCMSI argues that the appeals officer created a new requirement under NRS 617.457(11) that employers must correlate specific corrective action to specific predisposing conditions for the specific type of heart disease. Odell counters that the appeals officer merely applied the plain language of the statute to the existing facts. We agree with Odell.

NRS 617.457 addresses the heart diseases of firefighters, police officers, and arson investigators. As pertinent here, the statute creates a conclusive presumption that disabling heart diseases of firefighters with two or more years of service arise out of and in the course of their employment. NRS 617.457(1). To this end, the plain language of NRS 617.457, subsection (1), provides that "diseases of the heart of a person who,

COURT OF APPEALS
OF
NEVADA

7

for 2 years or more, has been employed in a full-time continuous, uninterrupted and salaried occupation as a firefighter . . . before the date of disablement are conclusively presumed to have arisen out of and in the course of the employment *if the disease . . . causes the disablement.*" NRS 617.457(1) (emphasis added).[3]

A firefighter is not entitled to this presumption, however, if they fail to correct predisposing conditions *"which lead to heart disease* when so ordered in writing by the examining physician subsequent to the [required] physical examination . . . if the correction is within the ability of the [firefighter]." NRS 617.457(11) (emphasis added); *Daniels,* 122 Nev. at 1016, 145 P.3d at 1028. "Because the plain and unambiguous language in NRS 617.457(11) precludes an employee who fails to correct a predisposing condition from relying on the conclusive presumption in NRS 617.457(1), it may operate as an affirmative defense to such a claim." *LVMPD v. Holland,* 139 Nev., Adv. Op. 10, 527 P.3d 958, 963 (2023).

Applying the whole-text canon to NRS 617.457, subsection (11), which creates the affirmative defense, must be read in harmony with subsection (1), which creates the conclusive presumption that a firefighter's heart disease arises out of their employment. As noted above, the presumption in subsection (1) only applies to the heart disease that "causes the disablement." NRS 617.457(1). Reading subsection (1) together with

---

[3]Notably, the conclusive presumption applies even if the disabling heart disease was caused by a congenital condition. *See Manwill v. Clark County,* 123 Nev. 238, 242-43, 162 P.3d 876, 879 (2007) ("[O]nce the firefighter shows that he has heart disease and . . . qualifying employment before the date of disablement, his heart disease, whatever the cause— whether congenital, idiopathic, or otherwise induced—is covered, despite any preexisting symptom or condition.").

subsection (11), the "heart disease" referenced in subsection (11) must be the same heart disease that "causes the disablement" referenced in subsection (1). We therefore conclude that, under a plain reading of the statute, the relevant predisposing conditions that must be corrected for the presumption to apply in subsection (11) are the predisposing conditions that lead to the disabling heart disease in subsection (1).

The appeals officer concluded that Odell submitted sufficient evidence to show that his predisposing conditions of high blood sugar and lipid levels did not lead to the heart disease that caused his disablement. Relying largely on the opinions of Dr. Reardon and Dr. Narula, she instead concluded that his congenital heart disease, complications from his childhood surgery, and smoke exposure and stress at his job were the relevant predisposing conditions that led to Odell's disabling heart disease. CCMSI's argument that it succeeded in its affirmative defense because Odell had the ability to control his blood sugar, LDL, overall cholesterol, and triglyceride levels is thus irrelevant in this case. And the appeals officer's finding that Odell's high blood sugar and lipid levels did not lead to Odell's disabling heart disease is supported by substantial evidence in the form of opinions from multiple physicians.

To prevail on its affirmative defense, CCMSI needed to show that the relevant predisposing conditions (here, Odell's congenital heart defect, latent complications from surgery, and job-related smoke exposure and stress) were within Odell's ability to correct. Of course, this is virtually impossible. Not only is Odell unable to reverse a congenital heart defect and a surgery he had at the age of two, or eliminate smoke and stress from firefighting, no doctor ordered him to do so, which is a requirement of NRS 617.457(11). Odell's predisposing conditions that led to his disablement

Court of Appeals
of
Nevada

9

were outside his ability to correct, and the appeals officer did not abuse her discretion by finding that Odell qualified for the conclusive presumption under NRS 617.457(11).

## CONCLUSION

We hold that a plain reading of NRS 617.457 requires that the predisposing conditions referenced in subsection (11) are the same predisposing conditions that lead to the heart disease that causes the claimant's disablement as described in subsection (1). Thus, to assert the affirmative defense in NRS 617.457(11), a party opposing a firefighter, police officer, or arson investigator's workers' compensation claim under NRS 617.457 must correlate the corrective action to the predisposing conditions that actually cause the firefighter, police officer, or arson investigator's disabling heart disease. Because the appeals officer correctly applied the law and substantial evidence supports her findings in this case, we affirm the district court's order denying the petition for judicial review.

_____, J.
Gibbons

We concur:

_____, C.J.
Bulla

_____, J.
Westbrook