871 P.2d 317 (1994)
The MIRAGE CASINO-HOTEL D/B/A The Mirage, Appellant,
v.
NEVADA DEPARTMENT OF ADMINISTRATION APPEALS OFFICER; and Carole Long, Respondents.
No. 24258.
Supreme Court of Nevada.
March 30, 1994.
*318 William B. Werner and Salvatore A. Basile, Las Vegas, for appellant.
Nancyann Leeder, Nevada Atty. for Injured Workers, and Robert L. Hempen, Deputy, Carson City, for respondents.

OPINION
PER CURIAM:
This appeal involves a dispute as to the date an employee becomes entitled to worker's compensation benefits in the event of an occupational disease, as well as the proper period from which to calculate the employee's average monthly wage for purposes of such benefits. We hold that the employee becomes eligible for benefits when the employee is no longer able to continue working due to the occupational disease. Therefore, the proper twelve-week period from which to calculate the average monthly wage is the period immediately preceding the employee's date of disability.
The facts of this case are not in dispute. Respondent Carole Long ("Long") began working for appellant The Mirage Casino-Hotel ("Mirage") as a poker dealer in November 1989. In January 1990, Long began experiencing pain in her right hand. She consulted her doctor and was prescribed medication. Four months later, Long's physician informed her that her condition was related to her work. Thereafter, Long accepted Mirage's offer of another position that did not require dealing poker.
In June 1991, Long returned to her previous job as a poker dealer but was assigned to a different shift. Shortly after she resumed working as a dealer, she began to experience pain in both arms and wrists. In November 1991, Long filled out an employee accident report. On the report she was required to give an "injury date" which she gave as November 15, 1991. Long continued to work, and in January 1992, she returned to her original shift as a dealer (7 p.m. to 3 a.m.).
On April 21, 1992, Long's physician excused her from work due to the worsening of her condition which, by this time, had been diagnosed as carpel tunnel syndrome. Thereafter, Mirage commenced paying Long temporary total disability benefits amounting to two-thirds of her average monthly wage (including tips) over the period immediately preceding her reported "injury date," November 15, 1991.
Long requested recalculation of her benefits, claiming that the proper period from which to calculate payments was the period preceding April 21, 1992, the date she ceased working due to her disability. She had reported no tips on her pay sheets during the earlier period from September 1, 1991, to November 10, 1991. However, she had reported tips in the amount of $4,200 during the period immediately preceding the date she stopped working.
The hearing officer remanded the case for review and recalculation. After Mirage declined to recalculate Long's benefits, Long appealed to the appeals officer. The appeals officer held that when the accident and the disability do not occur simultaneously, the wage at the time of disability should be used to calculate benefits. Therefore, Long's benefits should have been calculated from the period prior to April 21, 1992, the date she stopped working. The district court affirmed the appeals officer's decision. Mirage appeals.
The issue before this court is a question of law as to the proper period from which to calculate disability benefits in the event of an occupational disease. In reviewing an agency decision, this court is free to address purely legal questions without deference to the agency's decision. Town of *319 Eureka v. State Engineer, 108 Nev. 163, 826 P.2d 948 (1992).
NRS Chapter 616 governs industrial insurance, while NRS Chapter 617 governs occupational diseases. Mirage contends that NRS Chapter 617 contains no modification of the method of calculating the amount of disability benefits to which an employee is entitled under NRS Chapter 616. Therefore, Mirage maintains that the calculation is necessarily controlled by NRS Chapter 616. Specifically, Mirage argues that benefits must be calculated in accordance with NRS 616.027 which defines "average monthly wage" as the wage received on the date of the accident or injury, and NAC 616.678 which provides that such wage is calculated by averaging the employee's wages for the preceding twelve-week period. Thus, Long's average monthly wage should be calculated from the twelve weeks preceding November 15, 1991, the date she gave as her "injury date."
We disagree. We note that although NRS Chapter 617 does not contain a precise method for the calculation of disability benefits for occupational diseases, its provisions provide sufficient guidance for determining the date of eligibility for such benefits.
Initially, we look to NRS 617.060 which defines disablement for purposes of occupational diseases as "the event of becoming physically incapacitated by reason of an occupational disease arising out of and in the course of employment. . . ." Under this statute, Long did not become disabled until she was no longer able to work on April 21, 1992. The fact that she gave an earlier date as her "injury date" is irrelevant since she was not "injured" on the earlier date, but rather suffered from an occupational disease.
As to benefits, NRS 617.420 requires that in order to become eligible for disability benefits, the employee must be incapacitated by the occupational disease for at least five cumulative days within a twenty-day period earning full wage. This statute also provides that in such cases, compensation in terms of average monthly wage must be computed from the date of disability.[1] Only after the employee becomes disabled does it become necessary to look to NRS Chapter 616 for the method of calculating the employee's average monthly wage.
In the instant case, Long continued to work until April 21, 1992. Therefore, she was neither disabled nor eligible for benefits in accordance with NRS 617.420 until she ceased working for at least five cumulative days during a twenty-day period. Hence, Long's wage could be calculated only after she was disabled; i.e., unable to continue working. Indeed, it would be illogical to calculate her average monthly wage from the period preceding her "injury date" of November 15, 1991, which was five months prior to the date her condition forced her to stop working. Such a method of calculation would be contrary to NRS 617.420.
Finally, we note that Mirage claims that the driving force behind this litigation is Long's desire to have her average monthly wage calculated from a period during which she reported substantial tip income. Long did not report tip income during the period preceding her "injury date." Mirage's speculation as to Long's motives is irrelevant to this appeal. The issue before this court is the proper method of calculating Long's average monthly wage, not her motivation in pursuing greater benefits.
In conclusion, we hold that the district court did not err in denying Mirage's petition for judicial review. The appeals officer correctly determined that Long became eligible for benefits on April 21, 1992, the date she ceased working due to her occupational disease. Therefore, her average monthly wage should be calculated from the period immediately preceding her date of disability.
Accordingly, we affirm the decision of the district court.
NOTES
[1] We do not address the definition of "cumulative days" as would apply to employees whose working hours are gradually decreased due to an occupational disease. Nor do we address the computation of the average monthly wage in such situations.