THE STATE INDUSTRIAL INSURANCE SYSTEM AND THE RIVIERA, INC., APPELLANTS, v. FLOYD FOSTER, JR., RESPONDENT.

No. 24048

May 19, 1994                                    874 P.2d 766

R. Scott Young, General Counsel and Nancy K. Richins, Associate General Counsel, Carson City, for Appellant State Industrial Insurance System.

Gordon & Silver, Ltd. and Kimberly Wanker, Las Vegas, for Appellant The Riviera, Inc.

Burke & Christopherson, Las Vegas, for Respondent.

# OPINION

*Per Curiam:*

On March 16, 1990, Floyd Foster suffered a myocardial infarction (heart attack) while working as a slot mechanic for the Riviera Hotel & Casino ("Riviera"). Foster filed a claim for industrial insurance compensation, which was denied by the State Industrial Insurance System (SIIS) pursuant to NRS 616.110(2). After a hearings officer affirmed the SIIS decision, an appeals officer, relying upon SIIS v. Weaver, 103 Nev. 196, 734 P.2d 740 (1987), reversed the decision of the hearings officer. On petition for judicial review, the district court upheld the appeals officer's decision. For the reasons stated below, we reverse.

## FACTS

Foster was 51 years of age at the time of his heart attack. A long-term smoker, whose father had died from a heart attack at age 43, Foster considered himself to be in "very good" health. Foster normally worked an eight hour shift and he was occasionally required to lift and move gaming machines that weighed in excess of 200 pounds. In late 1989 or early 1990, the Riviera commenced extensive renovations that required Foster and fifteen other employees to move and install approximately 3,000 gaming machines. As a result, Foster worked twelve to sixteen hours per day in the weeks immediately preceding his heart attack. Although the work was admittedly more strenuous than usual, Foster spent most of his time "installing, putting the machine[s] together, drilling, mounting and wiring."

Foster worked approximately eight hours on the day of his heart attack, during which time he did not engage in any onerous or unusual activity. Specifically, Foster installed an "EDT system that involved drilling access holes and . . . running cable." Foster began feeling faint, and at his supervisor's direction, went home. Eventually, Foster was admitted to the hospital; there, his treating physician was unable to designate the heart attack as "job incurred." Almost a year later, Foster's own doctor came to the opposite conclusion:

> There is little doubt in my mind that Mr. Foster sustained his myocardial infarction as a result of a rather sudden increase in his work load in both hours spent and severity of labor

over a period of four weeks prior to the myocardial infarction. I believe that this increase in physical work, superimposed upon an extraordinary over-time schedule, definitely precipitated his inferior wall infarction. . . . As such, it is my feeling that his myocardial infarction is, or should be, compensable since it followed extraordinary exertion in the course of his employment.

The appeals officer relied upon the second doctor's opinion to find a "clear causal relationship" between Foster's work and his heart attack, and to conclude that Foster's injury was therefore compensable. On petition for judicial review, the district court upheld the appeals officer's decision based upon the conclusion that the circumstances of Foster's injury fell within the exception to NRS 616.110(2) announced in State Industrial Insurance System v. Weaver, 103 Nev. 196, 734 P.2d 740 (1987).

## DISCUSSION

The sole issue presented by this appeal is whether our decision in *Weaver* applies to the uncontroverted circumstances of Foster's heart attack. Because this appeal is inextricably tied to NRS 616.110(2) and its judicially-created exception, an independent review, rather than the more deferential standard required by NRS 233B.135(3), is appropriate. *See* Maxwell v. SIIS, 109 Nev. 327, 329, 849 P.2d 267, 269 (1993) (statutory construction is a question of law inviting independent appellate review of administrative ruling rather than a more deferential standard).

NRS Chapter 616 provides compensation for injuries suffered by workers as a result of employment accidents.[1] Our legislature has clearly exempted heart attacks and other heart-related episodes from the chapter's purview. NRS 616.110(2).[2] Although preexisting diseases may be compensable where aggravated or accelerated by an employment injury, in Spencer v. Harrah's

---

[1]An accident is defined as: "[A]n unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." NRS 616.020. An injury that results from an accident is defined as: "[A] sudden and tangible happening of a traumatic nature, producing an immediate or prompt result, including injuries to artificial members." NRS 616.110.

[2]NRS 616.110(2) states:

For the purposes of this chapter, coronary thrombosis, coronary occlusion, or any other ailment or disorder of the heart, and any death or disability ensuing therefrom, shall be deemed not to be an injury by accident sustained by an employee arising out of and in the course of his employment.

Inc., 98 Nev. 99, 641 P.2d 481 (1982), we held that compensation is unavailable when preexisting *heart* disease is aggravated by an employment condition. *See also* SIIS v. Connor, 102 Nev. 335, 721 P.2d 384 (1986). However, in SIIS v. Buckley, 100 Nev. 376, 682 P.2d 1387 (1984), we determined that there is no statutory prohibition to compensation when a "sudden, unforeseen and violent application of force" occasioned by an employment accident causes injury to the heart.[3] *Id.* at 379, 782 P.2d at 1389.

In *Weaver,* we narrowly extended the *Buckley* rule to allow compensation in severely limited instances where "exceptional and extraordinary physical exertion demanded by the employment" aggravates a preexisting heart disorder and causes death. *Id.* at 200, 734 P.2d at 742. Russell Weaver was a 59-year-old security inspector at the Nevada Test Site with a history of coronary heart disease. Despite Weaver's age and health, he was required by his employer to run one mile in eight-and-a-half minutes in order to retain his employment position. Weaver's duties did not normally require running and in seventeen years he had never before been required to run a mile. In the mid-July heat of southern Nevada, Weaver ran a mile within the prescribed time, took a drink of water, and immediately succumbed to cardiac arrest. *Id.* at 197, 734 P.2d at 741.

Foster argues that his strenuous work duties constituted the same "exceptional and extraordinary physical exertion" present in *Weaver.* We disagree. Foster was required to work greater hours over a gradual period of time, yet his increased work hours involved the same basic duties he had performed for the previous twelve years. Whereas the exceptional, employer-mandated physical stress upon Weaver's heart rose to the level of a "violent causative force" similar to the defibrillator accident in *Buckley,* there was no comparable exertion or causal force in Foster's case. There is simply no evidence that Foster's cardiac event resulted from a "violent causative force" at work that would suffice for invoking the highly limited rule in *Weaver.* Foster's condition, and the circumstances surrounding his attack, strongly suggest that Foster's heart attack could have occurred anywhere or at anytime. Spencer v. Harrah's Inc., 98 Nev. at 102, 641 P.2d at 483. In any event, if we were to recognize coverage in the instant case, the *Weaver* rule would be expanded and rationalized

---

[3]In *Buckley,* a nurse with no preexisting heart disease or disorder accidently came into contact with a defibrillator, which sent a strong electrical shock through her body. As a direct result of the shock, her mitral valve prolapsed. We concluded that the accident was properly without the scope and intent of NRS 616.110(2) because it resulted from an identifiable causative force.

to the point of devouring the legislature's unambiguous intent as expressed in NRS 616.110(2). This we refuse to do.

Our decision obviates the need to determine whether Foster's heart attack resulted from an employment accident as required by NRS 616.615.

## CONCLUSION

For the reasons discussed above, the order of the district court upholding the decision of the appeals officer is reversed.