135 Nev., Advance Opinion 35

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| LAURA DEMARANVILLE, SURVIVING SPOUSE OF DANIEL DEMARANVILLE (DECEASED), Appellant/Cross-Respondent, vs. EMPLOYERS INSURANCE COMPANY OF NEVADA; AND CANNON COCHRAN MANAGEMENT SERVICES, INC., Respondents, and CITY OF RENO, Respondent/Cross-Appellant. | No. 72737 **FILED** SEP 05 2019 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Appeal and cross-appeal from a district court order granting in part and denying in part a petition for judicial review in a workers' compensation matter. First Judicial District Court, Carson City; James E. Wilson, Judge.

*Affirmed in part, reversed in part, and remanded.*

Evan B. Beavers, Nevada Attorney for Injured Workers, Samantha Peiffer, Deputy Nevada Attorney for Injured Workers, Carson City, for Appellant/Cross-Respondent.

Sertic Law Ltd. and Mark S. Sertic, Reno, for Respondent Employers Insurance Company of Nevada.

McDonald Carano LLP and Timothy E. Rowe and Chelsea Latino, Reno, for Respondent Cannon Cochran Management Services, Inc., and Respondent/Cross-Appellant City of Reno.

19-37058

BEFORE HARDESTY, STIGLICH and SILVER, JJ.

*OPINION*

By the Court, STIGLICH, J.:

This appeal and cross-appeal concern a claim for workers' compensation death benefits. Laura DeMaranville sought benefits after her husband Daniel DeMaranville died as a result of heart disease. After Daniel's former employer, the City of Reno, and its former insurer, Employers Insurance Company of Nevada (EICON), denied benefits, an appeals officer reversed, finding that Daniel's death was caused by compensable occupational heart disease, that the City of Reno was liable as the self-insurer, and that the amount of the claim was based on Daniel's income from his private employer at the time of death. The district court affirmed the appeals officer's decisions as to compensability and liability and reversed as to the award amount, concluding that the award should be based on Daniel's wages from the City on the date of disablement (death), which were zero.

Because EICON insured the City when Daniel was last exposed to the risk that was causally connected to his occupational disease, EICON was liable under the last injurious exposure rule. We therefore reverse the liability determination, as the last injurious exposure rule determines the liable insurer for an occupational disease claim that arose out of and in the course of employment, even if the employee no longer works for that employer. We also reverse the award amount determination because for a death benefit claim for an occupational disease arising out of and in the course of employment under the statutory scheme as it applied to Daniel's claim, the monthly compensation amount should be based on the deceased

employee's earnings in the employment causally connected to the occupational disease underpinning the claim. Thus, death benefits should have been based on Daniel's wages at the time he last worked for the City.

*FACTS AND PROCEDURAL HISTORY*

Daniel worked for the City as a police officer from 1969 to 1990. He retired from that position and began working as a security officer for a private company. EICON insured the City's workers' compensation and occupational disease claims through 2002, when the City began to self-insure. On August 5, 2012, Daniel died from cardiac arrest shortly after a laparoscopic cholecystectomy (gallbladder removal surgery).

Laura filed a claim for compensation for occupational disease with the City. The City denied the claim, finding that the evidence did not show that heart disease caused Daniel's death. Laura appealed, and the parties agreed to forego a hearing before the hearing officer in favor of proceeding directly to an appeals officer. *Cf.* NRS 616C.315(7). After being informed that EICON was the appropriate insurer, Laura separately filed a claim with EICON, which also denied the claim on the basis that the evidence did not establish that Daniel died from heart disease. Laura appealed EICON's determination to a hearing officer, who reversed EICON's denial and held EICON liable. EICON appealed the hearing officer's decision. The City also appealed EICON's claim denial.

After consolidating the three appeals, the appeals officer considered several medical opinions and found that Daniel had heart disease that caused his death and that his heart disease was compensable as an occupational disease under NRS 617.457. The appeals officer concluded that the date of disablement was August 5, 2012—the date of Daniel's death—and that the City was liable for the claim because it was a

self-insured employer on the date of disablement. Holding that the City was liable, the appeals officer reversed the hearing officer's decision that EICON was liable for the claim, reversed the City's determination letter denying the claim, and affirmed EICON's determination letter denying the claim.

The City petitioned for judicial review of the appeals officer's decision. As that petition was pending and to comply with the appeals officer's decision, the City issued a determination that based the monthly amount for Daniel's death benefits on Daniel's wages in 1990 when he last worked for the City. Laura appealed this determination, seeking compensation based on the amount of Daniel's earnings from his private employer at the time of his death in 2012. A hearing officer affirmed the City's determination, and Laura appealed again. The appeals officer reversed the hearing officer's decision and concluded that the monthly benefit should be based on Daniel's wages as of the date of disablement. The City and EICON each petitioned for judicial review of the decision that the monthly benefit should be based on Daniel's 2012 wages from his private employer.

After consolidating these petitions for judicial review, the district court entered an order granting the petitions in part and denying them in part. The district court affirmed the finding that Daniel died from heart disease, a compensable occupational disease; affirmed the conclusion that the City was the liable insurer based on the date of disablement, ruling that the last injurious exposure rule did not apply; and reversed the conclusion that the monthly benefit was based on Daniel's 2012 wages from his private employer, ruling that the monthly benefit was based on Daniel's

wages on the date of disablement from the covered employer, the City, which were zero in 2012. Laura appealed, and the City cross-appealed.[1]

On appeal, Laura argues that her monthly benefits should be based on Daniel's 2012 wages from his private employer. The City argues that the evidence did not show that Daniel died from heart disease, that EICON should be liable for any viable claim because it insured Daniel's claims during his employment by the City, and that any benefit calculation should be based on Daniel's wages from the City at the time of disability, which were zero. EICON agrees with the district court that the correct benefit amount should be zero and that the City should be liable for any viable claim, but argues that it could not be liable for any claim because this court deprived it of due process by precluding it from arguing that Daniel's death benefit claim was not viable.

## DISCUSSION

*Substantial evidence supports the finding that Daniel died from heart disease*

Our role in reviewing an administrative agency's decision is the same as the district court's, and we give no deference to the district court's decision. *Elizondo v. Hood Mach., Inc.*, 129 Nev. 780, 784, 312 P.3d 479, 482 (2013). We review an administrative agency's legal conclusions de novo and its factual findings for clear error or an abuse of discretion and will only upset those findings that are not supported by substantial evidence. *Id.* Substantial evidence is present where "a reasonable person could find the

---

[1]EICON also cross-appealed, but its cross-appeal was dismissed for want of standing and its participation was limited to filing an answering brief. *See DeMaranville v. Cannon Cochran Mgmt. Servs., Inc.*, Docket No. 72737 (Order Dismissing Cross-Appeal and Reinstating Briefing, January 25, 2018); *cf.* NRAP 3A(a).

evidence adequate to support the agency's conclusion." *Id.* (internal quotation marks omitted).

In Nevada, the surviving spouse and dependents of an employee who dies from an occupational disease arising out of and in the course of that employment are entitled to compensation. NRS 617.430(1). A person who has been employed as a police officer for at least five continuous years and is disabled by heart disease is conclusively presumed to have a compensable claim for occupational disease benefits. *See* NRS 617.457(1) (2011).[2] An employee's heart disease may be compensable even if first discovered after the employee has terminated his or her employment. *See Gallagher v. City of Las Vegas*, 114 Nev. 595, 601-02, 959 P.2d 519, 522-23 (1998).

The City argues that substantial evidence did not support the finding that Daniel's death was caused by heart disease. We disagree. After surgery, Daniel became hypotensive and tachycardic (low blood pressure and an elevated heart rate). Troponin I enzymes (cardiac enzymes) were drawn, showing a level of 0.32 ng/mL. Daniel suffered cardiac arrest and could not be resuscitated. Daniel's surgeon, Dr. Myron Gomez, certified the cause of death as cardiac arrest caused by atherosclerotic heart disease.

---

[2]At all pertinent times in these proceedings, NRS 617.457 applied as amended in 2011. *See* 2011 Nev. Stat., ch. 124, § 2, at 584-85.

Consequently, we note that our reasoning here does not apply to claims subject to the 2015 amendments to NRS 617.457 that would have limited Daniel to receiving medical benefits and became effective on January 1, 2017. *See* 2015 Nev. Stat., ch. 420, §§ 3, 7, at 2429-31, 2433 (adding the limitation that "[a] person who files a claim for a disease of the heart specified in this section after he or she retires from employment as a firefighter, arson investigator or police officer is not entitled to receive any compensation for that disease other than medical benefits").

Dr. Charles Ruggeroli, a cardiologist specialist, concluded that heart disease caused Daniel's death, noting that Daniel had several cardiovascular risk factors and a baseline abnormal resting electrocardiogram; that Daniel was in good condition after surgery but then became hypotensive and tachycardic; and that Daniel's levels of troponin I were elevated, consistent with myocardial necrosis (heart damage) and heart disease as a cause of death. Dr. Jay Betz, an occupational medicine specialist, concluded that heart disease was a probable cause of death but posited that a certain cause of death could not be determined without an autopsy. Dr. Sankar Pemmaraju, a physical medicine and rehabilitation specialist, concluded that Daniel had several risk factors consistent with heart disease. Drs. Yasmine Ali and Zev Lagstein, internal medicine and cardiovascular disease specialists, however, concluded that heart disease was not likely the cause of death, though both were unaware that cardiac enzymes were drawn and showed an elevated level. Noting that the appeals officer found Dr. Ruggeroli's opinion to be credible, *see Elizondo*, 129 Nev. at 784, 312 P.3d at 482 (providing that this court will not "revisit an appeals officer's credibility determination" (internal quotation marks omitted)), and that the medical experts disagreeing that heart disease was the cause of death were unaware of Daniel's elevated troponin I level, we conclude that the record contains substantial evidence for a reasonable person to conclude that heart disease caused Daniel's death and thus that the district court did not err in upholding the appeals officer's determination in this regard.

*The last injurious exposure rule applies in determining liability for occupational disease claims for conclusively presumed disabilities*

As Daniel's dependents had a compensable claim for his occupational disease, we must determine which entity was liable to pay the benefit under the Nevada Occupational Diseases Act. The last injurious

SUPREME COURT
OF
NEVADA

(O) 1947A

7

exposure rule places "full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability." *State Indus. Ins. Sys. v. Jesch*, 101 Nev. 690, 696, 709 P.2d 172, 176 (1985) (internal quotation marks omitted). The rule is a judicial creation, *Riverboat Hotel Casino v. Harold's Club*, 113 Nev. 1025, 1029-30, 944 P.2d 819, 822-23 (1997), the application of which we review de novo. *See State Indus. Ins. Sys. v. Foster*, 110 Nev. 521, 523, 874 P.2d 766, 768 (1994) (reviewing agency's conclusion concerning judicially created rule in workers' compensation matter de novo). We have previously applied the last injurious exposure rule to determine liability where a workers' compensation disability claimant had successive employers that could each have been liable for the claim. *Emp'rs Ins. Co. of Nev. v. Daniels*, 122 Nev. 1009, 1016-17, 145 P.3d 1024, 1029 (2006). We conclude that this rule applies here as well, where a claimant's occupational disease is conclusively presumed to have arisen out of and in the course of employment pursuant to NRS 617.457(1) and has not been shown to be caused by later employment with a successive employer.

As Daniel's heart disease is conclusively presumed to have arisen out of and in the course of his employment with the City, liability falls on the carrier of the City's risk at the time Daniel worked for the City because that employment is the latest exposure causally connected to Daniel's occupational disease. *See* NRS 617.410 (providing that compensation for an occupational disease claim "must be paid by the insurer"); NRS 617.457(1) (providing for compensation for heart disease as an occupational disease that is conclusively presumed to be connected to a qualifying claimant's employment); *Daniels*, 122 Nev. at 1017, 145 P.3d at 1029 (concluding that the employer temporally closest to the disabling event

to whom the conclusive presumption applies is liable for a claim with successive, conclusively presumed employers). EICON was the City's insurer in 1990 when Daniel had his last injurious exposure to the risk causally connected to his occupational disease and thus is liable under the last injurious exposure rule. The City's subsequent change to self-insured status and decision to carry its own risk does not affect the determination that EICON insured the risk at the causally relevant time. We therefore conclude that the appeals officer and the district court both erred in concluding that City was liable based on the date of Daniel's death.

*The occupational disease death benefit amount is based on the wages earned during the period causally connected to the occupational disease*

We next review the appeals officer's and district court's determinations regarding the amount of compensation appropriate for Daniel's death benefit. NRS Chapter 617 does not provide a method for determining the amount of the benefit, *Mirage Casino-Hotel v. Nev. Dep't of Admin. Appeals Officer*, 110 Nev. 257, 260, 871 P.2d 317, 319 (1994), but applies NRS Chapters 616A to 616D and their implementing regulations for the purpose of determining benefits, NRS 617.015; NRS 617.430(1). The application of these statutes to determine the proper period from which to calculate occupational death benefits is a purely legal question that we review de novo. *Mirage*, 110 Nev. at 259, 871 P.2d at 318. When a statute is unambiguous, we apply its ordinary meaning. *Valdez v. Emp'rs Ins. Co. of Nev.*, 123 Nev. 170, 174, 162 P.3d 148, 151 (2007). When it may be given more than one reasonable interpretation, it is ambiguous and should be interpreted consistent with the Legislature's intent, according with reason and public policy. *Id.*

NRS 616C.505 sets forth the amount of a death benefit for an occupational disease claim. *See Banegas v. State Indus. Ins. Sys.*, 117 Nev.

222, 224-25, 19 P.3d 245, 246-47 (2001) (interpreting NRS 616C.505 as controlling the death benefits where an employee died from work-related lung disease). Notwithstanding burial and other related expenses and in the absence of other dependents, a surviving spouse may recover 66 2/3 percent of the decedent's average monthly wage for the life of the surviving spouse. NRS 616C.505(1)-(2). To determine average monthly wage, the adjudicator considers the employee's earnings from a period of 12 weeks "ending on the date on which the accident or disease occurred, or the last day of the payroll period preceding the accident or disease if this period is representative of the average monthly wage" pursuant to NAC 616C.435(1), (8). While the date of occurrence for an industrial accident may be unambiguous, the date of occurrence for an occupational disease is not. *See Union Carbide Corp. v. Indus. Claim Appeals Office of Colo.*, 128 P.3d 319, 321 (Colo. App. 2005) (observing that the occurrence of an occupational disease is ambiguous because the disease may be interpreted as occurring when the worker "is injuriously exposed to the disease, when the disease is first diagnosed, when symptoms first appear, or when the disease becomes disabling"); *see also Ins. Co. of N. Am. v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212, 1222 (6th Cir. 1980) (concluding that "injury" and "occurrence" are ambiguous in the context of progressive diseases, which are distinguishable from injuries resulting from common accidents). Accordingly, we must ascertain the relevant legislative intent.

We conclude that the statutory scheme that provides for and regulates compensating a disabled employee for an occupational disease demonstrates a legislative intent to compensate viable claims. For a decedent like Daniel with a claim conclusively connected with employment, but who worked for a different employer at death, two interpretations

present themselves: (1) either the Legislature intended the amount of Daniel's monthly death benefits to be zero because he did not work for the employer causally connected to his claim immediately before his disablement, i.e., his death, or (2) the Legislature intended the amount of death benefits to be based on actual wages Daniel earned. As basing Daniel's death benefits on his wages from the City at the time of death would effectively nullify any claim for an occupational disease arising more than 12 weeks after terminating the employment that is causally connected to the disease, *cf.* NAC 616C.435, we conclude that interpretation conflicts with the Legislature's intent, as numerous provisions envision compensating claims arising after separation from service without reference to a 12-week limiting period, *see* NRS 616C.052(3) (requiring testing for certain diseases 12 months after termination of employment that establishes lifetime eligibility for claims for those diseases); NRS 616C.150 (providing that employees may show after terminating employment that an industrial injury claim was causally connected to the employment and thus compensable); NRS 617.358(2) (same for occupational diseases); NRS 617.453(5) (contemplating compensable disabling cancer for firefighters arising in the period up to 60 months after terminating employment); NRS 617.487(5) (contemplating compensable disabling hepatitis for police officers first diagnosed within one year after terminating employment); *see also Gallagher*, 114 Nev. at 601, 959 P.2d at 522 (concluding that it would be unreasonable to deny claims of retired firefighters "because they did not discover their heart disease until some months after they retired"). and NRS Chapter 617 invites application of other provisions of NRS Chapters 616A to 616D in constructing its provisions, *see* NRS 617.015 (directing reference to NRS Chapters 616A to 616D). *See Banegas*, 117 Nev. at 229. 19 P.3d at

250 (providing that statutes should be construed within the context of the purpose of the legislation). Administrative regulations cannot contradict the statutes they implement, *Nev. Attorney for Injured Workers v. Nev. Self-Insurers Ass'n*, 126 Nev. 74, 83, 225 P.3d 1265, 1271 (2010), and construing NAC 616C.435 to provide a monthly benefit of zero in many of these instances would effectively nullify the provisions in these statutes that establish compensable claims. *See also Law Offices of Barry Levinson, P.C. v. Milko*, 124 Nev. 355, 366, 184 P.3d 378, 386 (2008) (providing that statutory construction must not render any provisions nugatory).

The City and EICON argue that this court's decisions in *Howard* and *Mirage* hold that Daniel's death benefit should be based on his 2012 wages from the City and thus equal zero. We disagree, as those cases are distinguishable on several bases. First, they addressed disability benefits, not death benefits, as here. *Howard v. City of Las Vegas*, 121 Nev. 691, 693, 120 P.3d 410, 411 (2005); *Mirage*, 110 Nev. at 260, 871 P.2d at 319. Second, they involved claims by the disabled employee, not an independent claim sought by a surviving dependent, as here. *See State Indus. Ins. Sys. v. Lodge*, 107 Nev. 867, 871, 822 P.2d 664, 666-67 (1991) (presupposing that widow's death benefit claim was an independent claim that was not foreclosed by decedent employee's failure to timely claim disability benefits before his death); *see also Survivors of Young v. Island Feeling, Inc.*, 125 P.3d 476, 480-81 (Haw. 2005) (collecting cases stressing distinction between claims for death and disability benefits). Third, both *Howard* and *Mirage* rested their conclusions that disability benefits were unavailable on the provision in NRS 617.420(1) limiting compensation payable for temporary total disability. *Howard*, 121 Nev. at 695, 120 P.3d at 412; *Mirage*, 110 Nev. at 260, 871 P.3d at 319. That provision plainly

does not apply here, as temporary total disability and death benefits are calculated differently, demonstrating the Legislature's intent that the two categories of benefits are distinct. *Compare* NRS 616C.475, *with* NRS 616C.505 (starting separate statutory sections by setting forth different calculations for disability and death benefits); *Banegas*, 117 Nev. at 230, 19 P.3d at 250 (considering titles affixed to statutes or subsections in ascertaining legislative intent). Fourth, providing that Daniel's dependents could not recover a meaningful death benefit would be contrary to the statutory "purpose of providing economic assistance to persons who suffer disability or death as a result of their employment." *See Banegas*, 117 Nev. at 231, 19 P.3d at 251; *see also* NRS 617.430(1) (providing that dependents are entitled to compensation where an employee dies as a result of an occupational disease). And fifth, negating the value of Daniel's death benefit would be inconsistent with the legislative intent evinced by the Legislature expanding the coverage of this type of occupational disease claim to a conclusive presumption for police officers like Daniel. *See* NRS 617.457(1); *Gallagher*, 114 Nev. at 601, 959 P.2d at 522. As *Howard* and *Mirage* are distinguishable, the district court erred in concluding that Daniel's death benefit amount was zero because he was not earning wages from the City when he died.

We further conclude that the legislative intent supports that Daniel's death benefit should be related to the wage earned at the time the occupational disease causally connected to the disability occurred. The Legislature created an entitlement for an employee who is injured or dies because of an occupational disease that arises out of and in the course of employment in Nevada to recover compensation. NRS 617.430(1). The compensation paid to an employee or his or her dependents is based on the

value received by the employee for his or her services, NRS 616A.090; NAC 616C.420, in the employment in which the injury or disease occurs, NAC 616C.435(9). The Legislature intended the linkage between an employee's compensable claim and employment to be so great that, in certain cases like this one, the connection is conclusively presumed. *See* NRS 617.457(1). Thus, the applicable statutory scheme shows a legislative intent to base the amount of Daniel's death benefits claim on the earnings from the employment causally connected to the occupational disease underpinning his claim. Accordingly, we disagree with Laura's argument that Daniel's death benefit claim should reflect his 2012 wages from his private employer rather than his 1990 wages from the City.

The role and liabilities of the insurer of this claim support this conclusion. The Legislature provided that the insurer who carries the risk of employee injury and illness must pay any compensable claim. NRS 617.410. Consistent with the legislative intent that we have discussed, the insurer's obligations for such claims should be based on the employment from which both the claim and the occupational disease arose, as that is the risk that the insurer insured. *See MGM Mirage v. Nev. Ins. Guar. Ass'n,* 125 Nev. 223, 231, 209 P.3d 766, 771 (2009) (observing that insurers traditionally undertake a duty to pay claims in exchange for the consideration of premium payments from the insured in construing an insurer's obligations on workers' compensation claims). To hold otherwise and base death benefits compensation on employment unrelated to the occupational disease or the claim that the insurer must pay would require insurers to pay obligations unrelated to the risk that they agreed to insure. Such an outcome would be both unreasonable and unfair.

Accordingly, we conclude that the applicable statutory scheme envisioned that Daniel's death benefits for his occupational disease claim should be based on the employment from which his disease arose. For purposes of determining his claim, we conclude that an occupational disease occurs for the purposes of an original death benefits claim on the last day of the disease-risk exposure that is causally connected to the disease. The district court therefore should have relied on Daniel's 1990 wages from the City and should have concluded that the appeals officer erred in relying on Daniel's 2012 private-employer wages.

*EICON has not shown a due process violation*

Lastly, EICON argues that this court violated its right to due process in barring it from challenging the validity of Daniel's claim. EICON has not shown a due process violation. EICON relies solely on *Callie v. Bowling*, 123 Nev. 181, 160 P.3d 878 (2007), which is distinguishable. In the suit underlying the appeal in *Callie*, Mr. Callie was not named as a party or served with a complaint or a summons. 123 Nev. at 182-83, 160 P.3d at 879. Where a claimant got an out-of-state judgment against Callie's company, domesticated the judgment in Nevada, and sought to amend the judgment to add Callie as an alter ego, Callie's due process rights were violated because he was rendered individually liable without receiving notice and opportunity to be heard. *Id.* at 183-84, 160 P.3d at 879-80. In contrast, EICON had notice of and participated in its own capacity at many different levels of administrative and judicial review. EICON undeniably had "notice and an opportunity to be heard" on Daniel's death benefits claim. *See id.* at 183, 160 P.3d at 879. EICON offers no authority supporting its proposition that this court deprived it of due process by limiting its participation to that of a respondent, and thus it has not shown

a due process violation in this regard. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006).

Accordingly, we affirm the district court's conclusion that substantial evidence supported the appeals officer's finding that Daniel died as a result of compensable occupational heart disease, reverse its conclusion that the City was the liable insurer, reverse its conclusion that the amount of death benefits compensation should be based on Daniel's 2012 wages rather than his 1990 wages from the City, and remand for further proceedings consistent with this opinion.

_____, J.
Stiglich

We concur:

_____, J.
Hardesty

_____, J.
Silver